Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4465 | **DATE** | 8/7/2002 |
| **CASE TITLE** | Interstate Fire & Casualty Company, et al vs. Ameristar Insurance Services, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiffs' motion for summary judgment (Doc. No. 18) granted. Judgment is entered in favor of Plaintiffs in the amounts awarded by the arbitration panel.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | AUG 0 9 2002 | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 28 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 8/ /2002 | |
| | Copy to judge/magistrate judge. | 02 AUG -8 PM 1:02 | date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERSTATE FIRE & CASUALTY COMPANY and INTERSTATE INDEMNITY COMPANY, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | No. 01 C 4465 |
| AMERISTAR INSURANCE SERVICES, INC., | ) ) ) | Judge Rebecca R. Pallmeyer |
| Respondents. | ) | |

DOCKETED
AUG 9 2002

## MEMORANDUM OPINION AND ORDER

Plaintiffs Interstate Fire and Casualty Company and Interstate Indemnity Company initiated arbitration proceedings to resolve a dispute with their agent, Defendant Ameristar Insurance Services, Inc. Ameristar participated with Plaintiffs in the arbitration, which resulted in an award of $350,000 for Plaintiffs. One week after the arbitrators issued the award, Plaintiffs petitioned this court to confirm it. Defendant did not seek to vacate or correct the award, nor initially, did Defendant even respond to Plaintiffs' confirmation petition. Presently before the court is Plaintiffs' motion for summary judgment, which the court grants for the reasons explained in this decision.

## FACTUAL BACKGROUND

Plaintiffs Interstate Fire & Casualty Company and Interstate Indemnity Company are insurance companies incorporated in Illinois and with principal places of business in this state. (Defendant's Response to Plaintiffs' Statement of Material Facts to Which There is No Genuine Dispute and Statement of Additional Facts (hereinafter, "Def. Stmt."), ¶¶ 1-2.) On July 1, 1986, Plaintiffs entered into an agency agreement (the "Long-Haul Agency Agreement" or "Agreement") with Michael C. McDermott Insurance Resources.[1] Defendant Ameristar Insurance Services, Inc., which was incorporated in and has its principal place of business in Texas, replaced McDermott as agent on the contract as of February 21, 1990. (Def. Stmt. ¶¶ 7-8.)



---

[1] The court notes that, later in both Plaintiffs' and Defendant's statement of facts, the parties refer to November 1, 1987 as the date that Plaintiffs and Michael C. McDermott Insurance Resources entered into an agency agreement.

Under the Long-Haul Agency Agreement, Defendant was Plaintiffs' agent for purposes of offering, receiving, and accepting binding long-haul trucking insurance policies. (Def. Stmt. ¶ 10.) In that role, Defendant was responsible for billing and collecting premiums for all of the long-haul trucking insurance policies it wrote. (Def. Stmt. ¶ 10.) The Agreement stipulated that Defendant would hold all premium payments as trustee for Plaintiffs. (Long-Haul Agency Agreement ¶ 3, Exhibit A to Plaintiffs' Statement of Material Facts to Which There is No Genuine Dispute Pursuant to Local Rule 56.1(a) (hereinafter, "Plfs. Stmt.")) The Agreement directs that within thirty days of the date on which Plaintiffs issue a statement setting forth amounts Defendant held for Plaintiffs, Defendant was required to submit payment of those premiums to Plaintiffs, less Defendant's commission. (Long-Haul Agency Agreement ¶ 3, Exhibit A to Plfs. Stmt.) The Agreement further provides that, even where Defendant disputes the amount set forth in Plaintiffs' statement, Defendant must submit payment as prescribed, "with full reservation of [Defendant's] rights." (Long-Haul Agency Agreement ¶ 3, Exhibit A to Plfs. Stmt.) Pursuant to the Agreement, certain disputes, including those relating to the collection and payment of premiums, must be resolved through arbitration. (Def. Stmt. ¶ 12.) Furthermore, the Agreement provides that a "written decision by any two arbitrators will be final and conclusive." (Def. Stmt. ¶ 79.)

In December of 1997, a dispute arose between the parties regarding the amounts of premium payments Defendant owed Plaintiffs for some period of time pursuant to the Long-Haul Agency Agreement. (Def. Stmt. ¶ 11.) On December 10, 1997, Plaintiffs demanded arbitration of the dispute. (Def. Stmt. ¶ 12.) Plaintiffs appointed Richard Bakka as their arbitrator, and Defendant appointed Karen Murphy as its arbitrator. (Def. Stmt. ¶ 15.) Nicholas J. Bua was "randomly selected" (presumably by Bakka and Murphy) as the third arbitrator, the umpire. (Def. Stmt. ¶ 15.)

The parties agreed at the September 30, 1998 organizational meeting that the arbitration proceedings would be governed by the Federal Arbitration Act. (Def. Stmt. ¶ 22.) Each party submitted preliminary statements to the panel; Defendant's preliminary statement included a

2

request that the panel "resolve all business issues and business conflicts between these parties." (Def. Stmt. ¶ 17.) Plaintiffs objected, both at the organizational meeting and in subsequent briefs, to Defendant's attempt to inject "issues of other disputes" into the arbitration proceedings. (Def. Stmt. ¶ 18.) Ultimately, the panel concluded that it did not have "authority and jurisdiction to determine . . . the arbitrable issues in this arbitration," and directed the parties to apply to the courts for such a determination. (Def. Stmt. ¶¶ 60-61.) Judge James Moran of this court issued an order on July 17, 2000, holding that certain issues relating to both the Long-Haul Agency Agreement and the Profit Sharing Agreement[2] were arbitrable in this proceeding, but that other issues raised by Defendant were not. (Def. Stmt. ¶ 63.)

Acknowledging that Judge Moran's order controlled the scope of the arbitration, the arbitration panel granted Plaintiffs' motion to strike Defendant's claims not arising under the Long-Haul Agency Agreement and stated: "Without foreclosing proffers of specific evidence going to specific matters in dispute, this panel will reject any attempt to introduce general evidence whose purpose is to obtain offsets against amounts due under the Long Haul Agency Agreement because of other controversies or contracts." (Def. Stmt. ¶ 71.) The panel conducted an evidentiary hearing on April 24 and 25, 2001, at the close of which Defendant's attorney thanked the panel for being "very generous . . . putting everything out here on the table" and allowing Defendant to "go[] into the full picture of the relationship between" the parties. (Def. Stmt. ¶ 75.) On May 29, 2001, a majority of the panel, with Murphy in dissent, awarded Plaintiffs $350,000 and dismissed Defendant's claims against Plaintiffs. (Def. Stmt. ¶ 76.) The panel mailed the award to the attorneys for the parties on June 5, 2001. (Def. Stmt. ¶ 78.)

Plaintiffs petitioned this court to confirm the arbitration award on June 13, 2001. (Doc. No. 1.) Defendant did not file a motion to vacate, amend, or challenge the award. Indeed,

---

[2] The parties entered into the Profit Sharing Agreement in conjunction with the long-haul trucking insurance program. The specific provisions of the Profit Sharing Agreement are not at issue here.

3

Defendant did not respond to Plaintiffs' petition in any fashion and on August 22, 2001, this court granted Plaintiffs' motion for a default judgment. (Doc. Nos. 3 & 4.) The court, on October 9, 2001, granted Defendant's September 14, 2001 motion to vacate the default judgment, and Plaintiffs' November 16, 2001 motion for summary judgment is now before the court. (Doc. Nos. 7, 12, 18.) Defendant raises a number of arguments challenging the award, including, for example, that the arbitration panel did not consider certain evidence regarding the parties' custom with respect to the Long Haul Agency Agreement, and that the panel did not deliberate on the issue of damages. (Ameristar's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 1-2.) Plaintiffs argue that these objections are waived. (Interstate's Memorandum in Support of Motion for Summary Judgment at 6.)

## DISCUSSION

This court's scope of review of a commercial arbitration award such as the one at issue here is "grudgingly narrow." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 114 F.3d 1250, 1253 (7th Cir. 1994). This limited scope is necessary to preserve "the benefits of reduced delay and expense" and to "prevent arbitration from becoming a 'preliminary step to judicial resolution.'" *Id.* at 1254, *quoting E.I. DuPont de Nemours v. Grasselli Employees Indep. Ass'n*, 790 F.2d 611, 614 (7th Cir. 1986). As such, the FAA allows courts to vacate an arbitration award "only in very specific situations." *Harter v. Iowa Grain Co.*, 220 F.3d 544, 553 (7th Cir. 2000); 9 U.S.C. § 10. Absent a statutory ground for vacating the award, the court must confirm it. 9 U.S.C. § 9; *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 650 (7th Cir. 2001).

A party intending to challenge an award must initiate such a challenge within three months after the award is filed or delivered. 9 U.S.C. § 12. After three months, the party is precluded from challenging the award. *See e.g., International Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 433-34 (7th Cir. 1998)[3] (where defendants failed to challenge award until

---

[3] *International Union* interprets the arbitration provisions of the Labor Management (continued...)

after plaintiff filed suit in district court to confirm the award more than three months after its entry, they were barred: "if there is an exception to the 90-day limitations period we have not encountered it in the past and we do not create one today. The rule is a simple one: If you receive notice of an adverse decision in federal labor arbitration, challenge it within 90 days or expect to pay up"); *Murphy Co.*, 82 F.3d at 188 (party who failed to give notice of challenge to award within ninety days must suffer "unavoidable consequences" and may not belatedly fight prevailing party's motion to confirm by attacking the award with arguments it could have asserted in a timely motion to vacate, modify or correct the award); *Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir. 1994) (party's failure to seek vacation of arbitration award within ninety days bars it from challenging plaintiff's action to enforce the award).

The principle is routinely enforced in commercial arbitration, as well. In *Fradella v. Petricca*, 183 F.3d 17, 18-21 (1st Cir. 1999), for example, the award entered by a National Association of Securities Dealers panel contained errors. The objecting party sought a correction directly from the panel, in the mistaken belief that the date to file a motion to vacate would begin to run from the date of the corrected award. The court nevertheless dismissed as untimely a motion to vacate the award filed seven days after the three-month period for such motions had passed.

As the Seventh Circuit observed years ago, the application of this three-month limit on challenges to arbitration awards is "well settled." *International Union of Operating Engineers, Local 150 AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987). In the instant matter, it is undisputed that Defendant did not challenge the arbitration award within the three-month period. This fact is outcome determinative, whether or not the prevailing parties had taken

---

³(...continued)
Relations Act ("LMRA"), 29 U.S.C. § 301 *et seq.* The provisions of that Act are similar to relevant provisions of the Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1-15, and courts as a matter of course cite decisions under one statute as support for decisions under the other. *See International Union of Operating Engineers, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 188-89 (7th Cir. 1996), *citing National Wrecking Co. v. International Brotherhood of Teamsters, Local No. 731*, 790 F. Sup.. 785, 789 (N.D. Ill. 1992) *aff'd. in part, rev'd in part*, 990 F.2d 957 (7th Cir. 1993).

5

any steps toward enforcement of the award. It is worth noting here, however, that Defendant knew well within the relevant three-month period that Plaintiffs either had sought or planned to seek court confirmation of the award. This notice might reasonably have prompted Defendant to challenge the award if it had any intention of doing so. Instead, Defendant did not even respond to Plaintiffs' confirmation petition. Defendant now attempts to explain its failure to respond to Plaintiffs' motion by alleging a deficiency with respect to service: Defendant asserts that "Plaintiffs did not send [Defendant's counsel] the 'form' waiver of service of summons; rather plaintiffs sent a summons and complaint." (Defendant's Motion to Vacate Default Judgment Entered on August 22, 2001, Doc. No. 7.) Even if there were some technical defect in service, however, Defendant acknowledges receiving a summons and complaint and offers no explanation for its failure to respond until after a default judgment was entered. More important, Defendant does not contend it was unaware of the award itself. Defendant did not assert its own challenge to the award within three months of the date the panel filed or delivered it. By allowing three months to pass without challenging the award, Defendant waived its right to challenge it, even in response to Plaintiffs' petition to confirm. *See Murphy Co.*, 82 F.3d at 188-89.

## CONCLUSION

Plaintiffs' motion for summary judgment to confirm the arbitration award (Doc. No. 18) granted. Judgment is entered in favor of Plaintiffs in the amounts awarded by the arbitration panel.

ENTER:

Dated: August 7, 2002

REBECCA R. PALLMEYER
United States District Judge